## In re Vote in Twenty-fifth Division of Twenty-eighth Ward

SMITH, P. J., November 18, 1932.—On November 8, 1932, the Election Board of the Twenty-fifth Division of the Twenty-eighth Ward of the City of Philadelphia occupied the store in the premises situate at the southwest corner of Myrtlewood and Huntingdon Streets for the purpose of conducting the presidential election. The citizens of that division had voted. The election board had tabulated, counted and signed the election returns. The election return sheets were placed within the ballot box in the store. The members of the election board, with the exception of the judge of election, had then gone to their respective homes. About 25 minutes to 3 o'clock on the morning of November 9th, the judge of election, William Silverman, locked the door of the store, leaving the box locked and tied in the store with no one present, and went out to obtain a conveyance to carry the box to the City Hall. At that time the "statement" was posted on the outside of the polling place as directed by the act of assembly, showing the election returns. About 3 o'clock the judge of the election returned and found the store in flames, smoke coming out of the rest of the dwelling house and firemen extinguishing the flames. With the help of the firemen the ballot box in a red-hot condition was removed from the store. The election return of the minority inspector had been left on the top of the ballot box. It was destroyed by fire.

The superintendent of elections, George W. Geasey, sent a police officer of the City of Philadelphia assigned to the election court for the ballot box. It was turned over to his custody and removed to City Hall to the judges of the common pleas court assigned to the counting of the votes. The court examined under oath the members of the election board of that division. The ballot box was examined in court. The box showed evidence of having been in a fire and the contents thereof were but a mass of burned and charred paper. None of the ballots or the returns of the election in said box were decipherable. The court called for the production of the "statement" which had been left hanging outside the building. It was undamaged. The judge of election testified that this window sheet is an exact copy of the return that the board had placed in the ballot box and that it had been completed before the outbreak of the fire and

signed by the entire board. All the members of the board testified that the signatures thereon were their signatures. The originals being destroyed, the court accepted the window sheet, known as the statement, produced in court as secondary evidence of the election return. The act of assembly calls for the return of specific papers to indicate the return of the election in that division and for a copy thereof, known as the statement, to be posted on the outside of the polling place. In this case, however, there was no evidence of fraud or collusion in destroying the ballots or the returns of that election. To do other than to accept the only evidence procurable of the election return of that division would disfranchise every voter in that election precinct having voted at the presidential election on November 8, 1932. This seems to be a hardship not justified by the evidence. In the absence of evidence of fraud or collusion in making a false election return or no return at all, the judges counting the votes should exert every sensible and practical effort, after a full hearing of all the facts and an examination of the entire election board, to carry into effect the mandate of the voters of that election division.

The facts surrounding the fire, which was not merely a casual one, but one that damaged the store and dwelling, and the result of the election itself would tend to the conclusion that no fraud has been committed or the ballots purposely destroyed.

The court thereupon directed that the vote be recorded as shown by the statement.